## HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. BULLARD, EXECUTOR.

No. 349.  Argued February 1, 1938.—Decided February 28, 1938.

*Assistant Attorney General Morris,* with whom *Solicitor General Reed,* and *Messrs Sewall Key, Ellis N. Slack,* and *Arnold Raum* were on the brief, for petitioner.

*Mr. Samuel S. Holmes,* with whom *Messrs. William D. Mitchell* and *Lorentz B. Knouff* were on the brief, for respondent.

By leave of Court, *Mr. Herman Aaron* filed a brief as *amicus curiae,* in support of respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner challenges a decision holding unconstitutional the provision of § 302 (c) of the Revenue Act of 1926,[1] as amended by Joint Resolution of Congress of March 3, 1931,[2] which requires the inclusion in a decedent's gross taxable estate of property transferred by irrevocable deed with reservation of a life estate. On account of alleged conflict with our decisions and of the important constitutional question presented we granted the writ of certiorari.

Clara R. Smith, a resident of Illinois, died in 1933. In 1927 she transferred securities, by irrevocable deed, to her son Edward, in trust to pay the income to her for life and, upon her death, to divide the corpus into three equal parts, the income from a part to be paid to each of her three children, Lora, Bessie, and Edward, during their lives, with remainders of the daughters' shares to their respective children; upon Edward's death leaving no issue the income from his share to be paid to his widow for life and, upon her death, the remainder to be added, in equal shares, to the daughters' trust funds. Edward died in 1928 leaving a widow but no issue.

---

[1] c. 27, 44 Stat. 9, 70; U. S. C. Tit. 26, § 411 (c).

[2] c. 454, 46 Stat. 1516; U. S. C. Tit. 26, § 411 (c).

In 1931 dissatisfaction with the administration of the trust impelled the decedent to seek its abrogation. Examination of the instrument disclosed violation of the rule against perpetuities. A bill was accordingly filed in an Illinois state court to have the trust declared void. The son's widow answered denying invalidity. A guardian *ad litem* representing the interests of infant beneficiaries in remainder also opposed the prayer of the bill. Subsequently, to avoid family discord and amicably to settle the pending litigation, a compromise agreement was made by the decedent and all the adult beneficiaries, consenting to the entry of a decree on condition that the decedent would declare a new trust of approximately one-third of the securities in the existing trust whereby Edward's widow should enjoy a life interest identical to that given her by the 1927 trust and, upon her death, the remainder should be equally divided between the decedent's daughters. The agreement further required the making of testamentary provision for the decedent's daughters and grandchildren, and certain outright gifts to the latter. In pursuance of the agreement, the decedent, on February 17, 1932, executed a new irrevocable deed of trust conveying approximately one-third of the corpus of the former trust and reserving to herself a life interest in the income, and executed a new will. A consent decree was then entered in the equity suit, the guardian *ad litem* representing to the court that the settlement would be advantageous to the minor beneficiaries.

The Commissioner's inclusion of the corpus of the trust of February 17, 1932, in the gross estate was sustained by the Board of Tax Appeals.[3] The Circuit Court of Appeals reversed the Board's decision.[4] We are of opinion that the action of the Commissioner and the Board should have been affirmed.

[3] 34 B. T. A. 243.
[4] 90 F. (2d) 144.

*First.* Both the Board and the Court held that the decree of the state court, notwithstanding its entry pursuant to stipulation, adjudicated the rights of the parties, abrogated the trust of 1927, and established the decedent's absolute ownership of the assets. This conclusion is fully supported by decisions of the Supreme Court of Illinois and we accept it. It follows that the respondent's contention that the transfer of 1932 has no independent existence and that, in legal effect, the trust for the son's widow stems from the deed of 1927, must be overruled.

*Second.* The trust of 1932 was created after the adoption of the Joint Resolution of March 3, 1931, which required inclusion in the gross estate of the value at the date of death of all property to the extent of any interest therein of which a decedent has at any time made a transfer by trust or otherwise under which the transferor retained for life the possession or enjoyment of the income from the property, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. It is urged that the settlement of the dispute as to the invalidity of the trust deed of 1927, conditioned, as it was, upon the making of the new trust, constitutes such a bona fide sale, for adequate consideration, as to bring the trust of 1932 within the exception. The argument is that the decree setting aside the 1927 trust merely gave judicial sanction to the compromise agreement and that the contract was for an adequate and valuable consideration and would, therefore, have been enforced by a court of equity at the instance of any of the parties to it.

While recognizing that a decree thus begotten has the same force and effect as a decree *in invitum*, the respondent seeks to go behind the decree and spell out a sale by Edward's widow of her interest under the 1927 trust for the interest conferred upon her by the 1932 trust. The court below has held the position untenable and we

agree. The decree declared the 1927 trust void and re-vested the trust assets in the decedent. If that trust was, as the Illinois court decreed, void and ineffective because it violated the rule against perpetuities the son's widow took no interest under it and gave nothing to procure the 1932 transfer.

*Third.* The Commissioner relies not only upon the Joint Resolution of March 3, 1931, but upon § 803 (a) of the Revenue Act of 1932.[5] We need not consider the latter since the Joint Resolution, if legally enforcible, in express terms authorized his inclusion of the trust fund in the decedent's gross estate. As the Resolution was adopted nearly a year prior to the creation of the 1932 trust no claim is or can be made that, as to that transaction, it is retroactive. The contention is that the transfer was *inter vivos,* was presently effective, was irrevocable, was not made in contemplation of, or effective at, death, and that Congress was, therefore, without power to make it the subject of an estate or inheritance tax; that, while the transfer might, by appropriate legislation, have been taxed as a gift, to tax it as in the nature of a testamentary disposition is a denial of due process. The contention is unsound for several reasons. Since Congress may lay an excise upon gifts it is of no significance that the exaction is denominated an estate tax or is found in a statute purporting to levy an estate tax. Moreover, Congress having the right to classify gifts of different sorts might impose an excise at one rate upon a gift without reservation of a life estate and at another rate upon a gift with such reservation. Such a classification would not be arbitrary or unreasonable. A further vindication of the exaction is the authority of Congress to treat as testamentary, transfers with reservation of a

---

[5] c. 209, 47 Stat. 169, 279; U. S. C. Tit. 26, § 411 (c).

power or an interest in the donor. The legislative history of the Joint Resolution, to which reference is made in *Hassett* v. *Welch, post,* p. 303, demonstrates that the purpose of the legislation was to prevent avoidance of estate taxes. As has been said by the Court of Appeals of New York:[6] "It is true that an ingenious mind may devise other means of avoiding an inheritance tax, but the one commonly used is a transfer with reservation of a life estate."

We have recently sustained the prospective operation of a provision including in the gross estate property which a decedent has transferred retaining power alone, or in conjunction with any other person, to alter, amend, or revoke.[7] We held the purpose of the clause was to prevent avoidance of tax and the measure was reasonably calculated to that end. As applied to a trust created after its enactment the Joint Resolution does not violate the Fifth Amendment.

The judgment is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.

[6] *In the Matter of Keeney,* 194 N. Y. 281, 287; 87 N. E. 428; affirmed 222 U. S. 525.

[7] *Helvering* v. *City Bank Farmers T. Co.,* 296 U. S. 85, 90. Compare *Milliken* v. *United States,* 283 U. S. 15; *Tyler* v. *United States,* 281 U. S. 497.