William P. GRAY, as Executor of the Will of William G. Robertson, Deceased, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 75–1153.

United States Court of Appeals, Ninth Circuit.

Aug. 20, 1976.

Rehearing Denied Oct. 12, 1976.

Keith H. Gill, Los Angeles, Cal. (Kadison, Pfaelzer, Woodard, Quinn & Rossi, Alan R. Woodard, and Terrance S. Nunan, Los Angeles, Cal., on the brief), for plaintiff-appellee.

Michael L. Paup, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and Richard Farber, Dept. of Justice, Washington, D.C. and William D. Keller, U.S. Atty., and Charles H. Magnuson, Asst. U.S. Atty., Los Angeles, Cal., of counsel, on the brief), for defendant-appellant.

## OPINION

Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.*

McWILLIAMS, Circuit Judge.

The question here to be resolved is whether the trial court erred in holding that the proceeds of a life insurance policy on decedent's life, which were paid to the decedent's former wife in accordance with the terms of a pre-existing property settlement agreement, were deductible from decedent's gross estate under Section 2053(a) of the Internal Revenue Code of 1954, as a claim against the estate. We conclude that the trial court did err, and the matter is remanded for further proceedings.

William Robertson, the decedent, and Jane Robertson, his wife, separated on August 15, 1966, after 22 years of marriage and four children. On August 24, 1966, William and Jane entered into a property

---

* Chief Judge David T. Lewis, Judge Robert H. McWilliams and Judge William E. Doyle of the Tenth Circuit, all sitting by designation.

settlement agreement which provided in pertinent part as follows:

# I

## RECITALS

\*   \*   \*   \*   \*   \*

1.04 The parties desire to make a full and final settlement and adjustment of their rights with reference to each other as to alimony and with respect to the property of the other, and to liquidate and settle the rights and claims of each in and to their property, whether joint tenancy, community or separate; and, without limiting the particularity of the foregoing, it is the intention of the parties to make this agreement integrated in that there exists reciprocal consideration for the agreements with regard to the division of property under Article IV and the provisions for support of Wife under Article V. *It is the further intent of the parties that this agreement shall not be modifiable other than by an instrument in writing executed by both parties, and that the court having jurisdiction of any divorce action between the parties shall not have the power to modify this agreement* other than as it pertains to the custody and support of the children of this marriage as provided in Article VI.

\*   \*   \*   \*   \*   \*

# IV

## DIVISION OF PROPERTY AND DISPOSITION OF DEBTS

\*   \*   \*   \*   \*   \*

4.03 Husband shall pay Wife the sum of $15,000 within thirty days following the execution of this agreement. Husband shall pay Wife an additional $40,000 on or before June 1, 1968.

\*   \*   \*   \*   \*   \*

# V

## SUPPORT OF WIFE

5.01 Husband agrees to pay to Wife for her support and maintenance $600 per month commencing on the first day of the first month following the execution

of this agreement and continuing until the death or remarriage of Wife or the death of Husband.

\*   \*   \*   \*   \*   \*

# VIII

## GENERAL PROVISIONS

\*   \*   \*   \*   \*   \*

8.02 Husband agrees that after the date hereof and during Wife's life he shall maintain a life insurance policy or policies in full force and effect insuring his life having an aggregate face value of not less than $50,000 and designating Wife as the beneficiary.

\*   \*   \*   \*   \*   \*

8.07 *This agreement shall survive its incorporation or merger into, or court approval in, an interlocutory judgment of divorce and is not dependent upon the filing or obtaining of a divorce by either party and shall be in full force and carried out pursuant to its terms whether or not a divorce is filed and/or obtained.* (Emphasis added.)

\*   \*   \*   \*   \*   \*

Divorce proceedings were subsequently instituted by William in the Superior Court of the State of California for the County of Los Angeles. An interlocutory decree in divorce was entered on January 31, 1967. The decree itself made no specific reference to William's obligation to maintain an insurance policy on his life, payable on his death to his former wife. However, the decree did contain the following provision:

The Property Settlement Agreement between the parties hereto, dated August 24, 1966, received in evidence herein as plaintiff's exhibit No. 1, is hereby approved, and the parties are ordered to carry out the executory provisions thereof.

A final decree in divorce was entered on November 20, 1967, and on that same date William was killed in an airplane crash. At the date of his death, a life insurance policy providing for payment of $50,000 to Jane upon William's death was in effect. The proceeds of this life insurance policy were

paid by the insurance company directly to Jane, and hence the latter never did make any claim against William's estate for this particular amount. Jane did file a claim against William's estate for the $40,000 still owing her under the property settlement.

On the tax return filed by William's estate, Gray, the executor, included the life insurance proceeds ($50,000) as a part of the gross estate but claimed the same amount as a deduction in computing the taxable estate. The Commissioner disallowed the deduction, and the executor paid the resulting deficiency in estate taxes. The estate thereafter filed a claim for refund and, upon disallowance of that claim, instituted the instant suit for refund of federal estate tax erroneously assessed and collected.

The United States filed an answer to the executor's suit, denying that any tax had been erroneously assessed and collected. Later a stipulation of facts was agreed to by the parties, whereupon the Government moved for summary judgment. It would appear that the basis for the Government's motion was that Jane did not have any claim, as such, against William's estate. Upon hearing, the trial court denied the Government's motion for summary judgment and contemporaneously therewith held that Jane had a claim against the estate which was deductible under section 2053 and entered judgment forthwith in favor of the estate. The Government now appeals. Reference to the pertinent statutes will help to place this controversy in focus.

■ 26 U.S.C. § 2053(a) provides that claims against an estate are to be deducted in the computation of the taxable estate. To be an allowable claim, the claim, if "founded upon a promise or an agreement," must have been "contracted bona fide and for an adequate and full consideration in money or money's worth." In other words, section 2053 seeks to make sure that the claim against an estate based on a dece-

dent's promise is bona fide and not a perfunctory creation of an obligation designed simply to lessen the taxable estate.

■ The parties agree that where a court decision underlays and is the basis for a claim against an estate, such obligation is deemed to be founded on other than a promise or obligation, and is deductible under section 2053(a) as a claim against the estate without reference to 2053(c). In other words, section 2053(c), requiring that the claim be bona fide and contracted for an adequate and full consideration, applies only to claims founded on promises or agreements, and has no application with respect to claims which are founded upon court decrees. *See* Lowndes, Kramer and McCord, Federal Estate and Gift Taxes, § 14.6, p. 360 (3 ed. 1974).

In the instant case, the trial court held, in effect, that on the basis of the stipulated facts, Jane had a claim against the estate for the proceeds of the insurance proceeds ($50,000) which was founded on the divorce decree and that accordingly, such claim was properly deductible from the gross estate.**

The Government's position in this court is embodied in Rev.Rul. 60–160, 1960–1 Cum. Bull. 374. That ruling holds where a claim against an estate has its origin in a property settlement agreement which has been approved and adopted in a subsequent divorce decree, the claim can be considered as being founded on the court decree, rather than the prior property agreement, only if the court entering the decree had the power to modify or alter the terms of the agreement. Conversely, then, if the court entering the divorce decree had under local law *no* power to modify the terms of the property agreement, the claim is deemed as being founded on the property agreement, and not the divorce decree. And this is true even though the court entering the divorce decree may have approved and adopted the property agreement and ordered its enforcement.

---

** The Government contended in the trial court that Jane had no claim whatsoever against the estate with respect to the insurance proceeds.

The Government in this court concedes that Jane had a claim, but asserts that it is not a deductible claim under the statute.

In the instant case it is agreed that under local California law, the California court entering the divorce decree had no power to modify or alter the terms of the property settlement agreement entered into between William and Jane. *Adams v. Adams*, 29 Cal.2d 621, 177 P.2d 265 (1947). In such circumstances we now hold that the claim of William's former wife against William's estate is not founded on the divorce decree, but is founded on the property agreement between the parties. *See Estate of Bowers v. Commissioner of Internal Revenue*, 23 T.C. 911 (1955); *Estate of Barrett v. Commissioner of Internal Revenue*, 56 T.C. 1312 (1971); and Lowndes, Kramer and McCord, Federal Estate and Gift Taxes, § 14.6, pp. 359–361 (3 ed. 1974).

We believe our holding that Jane's claim was founded on the property agreement, and not the divorce decree, is in complete accord with the property agreement itself. In that agreement appear the following pertinent provisions: (1) the agreement is not modifiable other than by an instrument in writing executed by both parties; (2) a court having jurisdiction to entertain a divorce action between the parties shall *not* have the power to modify the terms of the property agreement, except as to custody and support of minor children; (3) the agreement survives its incorporation or merger into, or court approval in, an interlocutory decree in divorce; and (4) the property agreement is not dependent upon the obtaining of a divorce by either party, and is in force and to be carried out pursuant to its several terms whether a divorce is ever obtained.

In view of these several provisions in the property agreement itself, coupled with the additional fact that under California law a California court entering a divorce decree, in the absence of fraud, has no power to modify or alter the property agreement, we are of the firm view that the claim of Jane's against the estate was indeed founded on the property agreement, and not the divorce decree. The fact that the decree ordered the parties to carry out the terms of the property agreement does not alter the situation. Such only imposed an additional method for enforcing the terms of the property agreement, and in no wise alters what is to us the inescapable fact that Jane's claim had its origin in, and was in fact founded on, the property agreement between the parties.

The executor relies heavily on the reasoning in *Commissioner of Internal Revenue v. Watson's Estate*, 216 F.2d 941 (2d Cir. 1954). We do not regard our holding in the instant case to be at odds with the holding in *Watson*. In *Watson* the property settlement between the parties was incorporated into a divorce decree in a proceeding in the state courts of Nevada. In Nevada, however, unlike California, a divorce court has the power to modify and alter the terms of a property settlement presented to it in a divorce proceeding. It was in this factual setting that the Second Circuit in *Watson* held that the claim was founded on the decree, and not the property settlement, and was accordingly deductible as a claim under § 2053(a). Similarly, in both *Harris v. Commissioner of Internal Revenue*, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950) and *Commissioner of Internal Revenue v. Maresi*, 156 F.2d 929 (2d Cir. 1946), the property agreement in question was incorporated into a divorce decree entered in the State of Nevada. So, in *Watson, Harris,* and *Maresi* the property settlement was in each instance incorporated into a Nevada divorce decree where the Nevada court was not obligated to accept the property settlement presented to it. On the contrary, under Nevada law the divorce court had the power to modify or alter the terms of the agreement. Under Rev.Rul. 60–160, 1960–1 Cum.Bull. 374, such a claim is deemed to be founded on the court decree, and not the antecedent property settlement. Such, however, is not the present case.

Having held that Jane's claim against the estate is founded on the property settlement, and not the divorce decree, does not end the matter. The Government concedes that such claim may still be deductible under § 2053(c) if it be founded on

a promise or agreement which was contracted bona fide and for an adequate and full consideration in money or money's worth. In this regard, the trial court held that based on the stipulated facts, the claim was founded on a promise and agreement which was contracted bona fide and for adequate and full consideration. The Government contends that there is nothing in the stipulation of facts which would support such a finding. We agree. Mere recitals in the property agreement, such as the reference to "reciprocal consideration" in the present property agreement, are insufficient. There must be further inquiry to ascertain whether Jane's claim was in fact founded on a promise or undertaking which was bona fide and for adequate and full consideration.

In support of the foregoing, *see Leopold v. United States,* 510 F.2d 617 (9th Cir. 1975), where this Circuit upheld a finding by the trial court that a testamentary gift to decedent's child was contracted bona fide and for an adequate and full consideration. In *Leopold* the trial court held an evidentiary hearing on the question whether the decedent's promise as embodied in the property settlement agreement was bargained for or merely gratuitous. It is of passing interest to note that in *Leopold* there was apparently no contention that the claim was founded on a court decree, even though the property settlement agreement had been approved and incorporated into the California divorce decree.

Judgment reversed and cause remanded for further proceedings.