**ESTATE of Isaac G. DARLINGTON, Provident Tradesmens Bank and Trust Company and Claude C. Smith, Executors, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 13781.**

United States Court of Appeals Third Circuit.

Argued March 20, 1962.

Decided April 25, 1962.

William White, Jr., Joseph W. Price, 3d, Philadelphia, Pa. (Sanford D. Beecher, Lowell S. Thomas, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for petitioners.

Charles B. E. Freeman, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

694

GOODRICH, Circuit Judge.

The question involved in this case arises under section 2053(d) (1) and (2) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2053(d) (1, 2). Section 2053 (d) (1) provides that the executor of an estate may elect to treat state inheritance taxes paid on charitable bequests as a deduction from the gross estate rather than as a credit against the federal estate tax. Subsection (d) (2) provides that such an election may be made only if the resulting decrease in the federal estate tax will inure solely to the benefit of the charitable beneficiaries.

Isaac G. Darlington, of Delaware County, Pennsylvania, died on October 10, 1956, leaving a will which directed that one-half of the residue of his estate was to be divided among certain named individuals, and that the other half was to be divided among certain charitable beneficiaries. He further directed that all estate and inheritance taxes were to be paid from the residue.

The executors of the estate filed their account in the appropriate state court and it was confirmed on October 24, 1957.[1] In their federal estate tax return, filed on January 10, 1958, they elected, under section 2053(d) (1), to treat the Pennsylvania state inheritance taxes paid on the charitable bequests as a deduction in computing the taxable estate rather than as a credit against the estate tax. This was disallowed on April 13, 1959, by the Commissioner, who ruled that the tax decrease would not inure solely to the benefit of the charities concerned. Petitioners paid the alleged deficiency and brought Tax Court proceedings to determine the existence of an overpayment arising from the Commissioner's disallowance of their election.

Following the institution of proceedings in the Tax Court, the executors filed a petition in the Orphans' Court of Delaware County seeking a revision of the original adjudication. They asked to have the adjudication provide, if possible, that all savings which would be derived from their election to treat the Pennsylvania inheritance taxes paid on the charitable bequests as deductions would inure solely to the benefit of the charitable beneficiaries. The case came on for hearing and counsel for the executors filed a brief and made an oral argument explaining what the executors wanted and why. Although citations had been served on all interested parties, and although all but one of the non-charitable beneficiaries were represented by counsel, there was no opposition to the executors' petition. Several weeks later, the Orphans' Court of Delaware County decided that, as a matter of Pennsylvania law, the decrease in the federal estate tax arising by virtue of the executors' election must inure solely to the benefit of the charitable beneficiaries. Darlington Estate, 22 Pa.Dist. & Co.2d 461 (1960). The Tax Court, nevertheless, denied the petitioning executors the deduction claimed under section 2053(d) (1). See 36 T.C. 599 (1961).

Whether an adjudication by an appropriate state court of a question of state law on which federal tax consequences are made to turn is to settle that question in the administration of a decedent's estate has several times been before this Court. We have three times held that, if federal law makes federal tax treatment depend, without further qualification, upon who has what rights in an estate under state law, a state court's adjudication which is final in its effect upon those rights must also be taken as final as to the tax matters which depend upon those rights. See Beecher v. United States, 280 F.2d 202 (3d Cir. 1960); Estate of Babcock v. Commissioner, 234 F.2d 837 (3d Cir. 1956); Gallagher v. Smith, 223 F.2d 218, esp. at 222–223 (3d Cir. 1955) (Maris, J., for the Court en banc).

[1]. In the Tax Court, testimony on behalf of the executors indicated that the reason the account was filed before the final date required by law was the not unusual situation of the legatees wanting to get their money as soon or sooner than possible.

We have also held squarely, in two of the three cases cited above, Beecher and Gallagher, that in order for the state court to settle conclusively the property question under state law and by that to fix the tax consequences under federal law, it is not necessary that the adjudication be the result of a contest in which one party says yes and another no. Other circuits have applied the same rule. Eisenmenger v. Commissioner, 145 F.2d 103 (8th Cir. 1944); Bullard v. Commissioner, 90 F.2d 144 (7th Cir. 1937), rev'd on other grounds sub nom. Helvering v. Bullard, 303 U.S. 297, 58 S.Ct. 565, 82 L. Ed. 852 (1938). We have, of course, made allowances for collusive proceedings or "consent decrees." As is said by Judge Maris in Gallagher v. Smith, supra, 223 F.2d at 225: "It is clear * * * that a state judgment obtained by collusion to defeat a federal tax need not be given conclusive effect in a suit in a federal court involving that tax."

There is not the slightest indication of a collusive arrangement here. All parties were summoned; the matter was presented in open court at a regular session thereof. Because the petitioners' request did not develop into a fight between the parties interested in the estate does not make the adjudication any less conclusive. We think it pretty clear that if anybody changes his mind concerning the result reached in the state adjudication he will have a bad time trying to avoid the effect of the Delaware County Orphans' Court's decision.

The Government takes the position that all we have here is an advisory opinion from the Orphans' Court. Since it is the law in Pennsylvania that courts do not have authority to render advisory opinions, the argument continues, the Delaware County Orphans' Court had no jurisdiction. There is no quarrel with the proposition that Pennsylvania courts are not authorized to give advisory opinions. But the point here is that this was an adjudication in the course of the settlement of an estate which was being distributed in accordance with Pennsylvania rules by a Pennsylvania court. The authority of that court is found in the local statute. Pa.Stat.Ann. tit. 20, § 2080.301 (1). There was a res to be affected by the adjudication. That was the fund in question and its application to one thing or another.

The Government also stresses, as showing that the Orphans' Court's adjudication was merely advisory, the fact that the language of the opinion reads: "All savings which may be derived" shall inure solely to the charities' benefit. We are not much impressed by this reasoning. That the fund was not in the hands of the executors and capable of immediate distribution is not controlling. The situation here is not unlike an adjudication which orders that a contingent remainder shall go to one person or another depending upon the occurrence or nonoccurrence of the contingency.

We think the Tax Court was incorrect in not giving effect to the adjudication of the Delaware County Orphans' Court in a question which was properly before that court.

The decision of the Tax Court will be reversed and the case remanded for further proceedings in accordance with this opinion.