**Dorell C. LUCE et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 75CV327–S.**

United States District Court,
W. D. Missouri, S. D.

Dec. 19, 1977.

John R. Lewis, Meredith B. Turner, Springfield, Mo., for plaintiffs.

David Jones, Asst. U. S. Atty., Springfield, Mo., for defendant.

## MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS CERTAIN PLAINTIFFS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

COLLINSON, District Judge.

### I. PROCEEDINGS TO DATE

This is an action for a refund of $27,-572.45 which was paid to satisfy an assessment against the estate of Myrtle Luce. Plaintiffs are Dorell C. Luce, Helen M. Jenkins, Vera L. Roach and the Union National Bank of Springfield, Missouri. The individual plaintiffs are the heirs of Oliver Luce. The Bank is named plaintiff in its capacity as executor of the estate of Myrtle Luce and in its capacity as trustee under the provisions of the revocable living trust agreement of Myrtle Luce. This Court has jurisdiction over this case under the provisions of 28 U.S.C. § 1346(a)(1) (1970).

The cause pends on defendant's motion "to dismiss individual plaintiffs and to substitute proper party for executor-plaintiff," and defendant's motion for partial summary judgment. Both motions were fled December 29, 1976. On April 1, 1977, the Court directed plaintiffs to file a narrative statement setting forth facts which they contend are still in dispute. This statement was filed May 20, 1977. The Government filed a reply to the narrative statement on June 8, 1977. On July 18, 1977, plaintiffs filed an affidavit in support of its narrative statement and the Government filed another reply on July 29, 1977. The record before the Court consists of the complaint, the Government's answer, interrogatories submitted by the Government and plaintiffs' responses, requests for admissions submitted by the Government and plaintiffs' responses, the pending motions and accompanying briefs, plaintiffs' narrative statement and supplemental filing, the Government's reply to the statement and supplemental filing, and all exhibits filed in connection with the pleadings and discovery.

### II. THE MOTION TO DISMISS

The Government's position is that the only proper plaintiff in this case is the Bank as trustee under the terms of the trust agreement of Myrtle Luce, the residual legatee under her will. Therefore, it seeks to have the Bank as trustee substituted as party plaintiff under the provisions of Rule 25(c), Fed.R.Civ.P. However, the Bank as trustee is a plaintiff in this case and the substitution is unnecessary. Thus, the issue on this motion is whether the other plaintiffs should be dismissed.

The Government argues that 28 U.S.C. § 1346(a)(1) (1970) waives sovereign immunity only in refund suits brought by an aggrieved taxpayer. A party wishing to invoke that jurisdictional provision must file a timely claim for a refund of the allegedly overpaid tax. 26 U.S.C. § 7422(a) (1970). Refund claims may only be filed by the taxpayer. 26 U.S.C. § 6511(a) (1970). In the instant case, the taxpayer was the estate. The Government argues that the individual plaintiffs are not taxpayers, filed no claims for a refund and, therefore, have no standing to bring this action. The Government argues that the Bank as executor is not a proper party plaintiff because it has been discharged and a final accounting of the estate has been completed. Accordingly, the only person with standing in this case is the Bank as trustee, the residuary legatee under Myrtle Luce's will.

The Government's position is a correct statement of the law and the individual plaintiffs do not contend otherwise.[1]

1. *Phillips v. United States*, 346 F.2d 999, 1000 (2d Cir. 1965); *First National Bank of Emlenton v. United States*, 265 F.2d 297, 299–300 (3d Cir. 1959); *Cf. Hofheinz v. United States*, 511 F.2d 661 (5th Cir. 1975). Even if the individual plaintiffs actually paid the additional assessment, they would have no standing in a refund suit. *Stahmann v. Vidal*, 305 U.S. 61, 66, 59 S.Ct. 41, 83 L.Ed. 41 (1938) (dicta); *Busse v. United States*, 542 F.2d 421, 424–425 (7th Cir.

Their position is that their interests in the outcome of this case are such that they would have been allowed to intervene under the provisions of Rule 24, Fed.R.Civ.P., or, alternatively, that they are necessary parties to this action under the provisions of Rule 19, Fed.R.Civ.P.

These plaintiffs have not filed a motion to intervene as required by Rule 24(c), Fed. R.Civ.P., and, therefore, that contention cannot be considered at this time. On the Rule 19 question, plaintiffs argue that since they obtained a judgment against the estate in state court on a contract theory, the Bank will be subject to inconsistent obligations if the Government prevails in this action with a different characterization of the state court claim. Rule 19(a)(2)(ii), Fed. R.Civ.P.

The Court cannot agree with that contention. The individual plaintiffs do claim an interest in this action in that they allege that they are entitled to a portion of any recovery obtained by the estate under the terms of the settlement agreement approved by the state court. Plaintiffs' Complaint, Paragraph 4. However, their absence from this action will not impair their ability to protect that interest since the Bank as trustee-residual legatee is a party and will still be obligated under the terms of the state court settlement agreement regardless of the outcome of this action. Rule 19(a)(2)(i), Fed.R.Civ.P. The Bank will not be subject to inconsistent obligations since any recovery obtained in this suit by the estate will be distributed in accordance with the settlement agreement. If the estate loses this action, the Bank will have satisfied all of its obligations under the settlement agreement. Rule 19(a)(2)(ii), Fed.R.Civ.P. Accordingly, the individual plaintiffs are not necessary for the just adjudication of this action and the Government's motion to dismiss them from the suit will be granted.

1976). In the instant case, though, the additional tax was paid by the Bank as executor. Answer to Requests for Admissions No. 34. Once an estate is closed and the executor discharged, he no longer has a sufficient interest

## III. UNDISPUTED FACTS

Myrtle and Oliver Luce were married in 1949. Each had children by prior marriages. Myrtle had one daughter, Nancy Shore, and Oliver had two daughters and a son, Helen Jenkins, Vera Roach and Dorell Luce. On January 21, 1950, Myrtle and Oliver executed substantially identical individual wills which provided that each would inherit the other's estate on the death of either. Upon the death of the survivor, the estate was to be equally divided among the four children.

Oliver died on September 19, 1967. He had not revoked or amended his will of January 21, 1950 and, following probate, his entire estate was distributed to Myrtle. On September 25, 1967, Myrtle executed a revocable living trust agreement, the principal consisting primarily of the assets received by her in distribution of Oliver's estate. This trust agreement gave Myrtle a life income with the remainder to be distributed equally among the four children and was, therefore, consistent with the terms of her will of January 21, 1950.

On December 8, 1967, Myrtle amended Article II of the trust agreement. The amendment changed the remainder disposition to give $15,000 to Helen S. Luce (Dorell's wife) and the remaining undistributed net income and principal to Nancy Shore. At the same time, Myrtle executed a new will revoking her will of January 21, 1950, granting a specific legacy to Paul Wagenseller (Myrtle's brother-in-law) and providing for the residue of her estate to "pour over" into the amended trust. The trust agreement was amended again on January 31, 1969 to provide that on Myrtle's death $15,000 would go to Helen S. Luce with the remainder in trust. Nancy Shore would then have a life estate in the trust income with a remainder over to Nancy Shore's children.

to have standing in a refund action. *Pettengill v. United States*, 253 F.Supp. 321, 322–323 (N.D.Ill.1966). Therefore, the Government's motion to dismiss the Bank as executor will be granted.

Myrtle died on March 25, 1970 and the Union National Bank of Springfield, Missouri was appointed executor. Her will of December 8, 1967 was admitted to probate. However, on November 11, 1970, Oliver's children, Dorell Luce, Helen Jenkins and Vera Roach, filed suit in the Circuit Court of Greene County, Missouri against the Bank, as executor of Myrtle's estate and as trustee under her trust agreement, Nancy Shore and others. This was a declaratory judgment action asking the court to declare the amendments to the trust agreement and Myrtle's later will void because they violated an alleged oral contract between Oliver and Myrtle prohibiting the revocation of the mutual wills. Plaintiffs alleged that they were third party beneficiaries to this contract.

On May 7, 1971, the parties to the state court action entered into a proposed settlement agreement which was filed for approval with the circuit court. The court approved the settlement agreement on June 4, 1971. The order recited the petition for settlement approval, referred to a statement of facts, oral testimony and suggestions of the parties, and made several findings. These findings encompassed the transactions noted above and concluded with the court's holding that the plaintiffs in that action could make a submissible case on the issue of the existence of the contract and that it was reasonable for the trustee to settle their claims. Under the terms of the settlement agreement, the plaintiffs received $99,362.19 in full satisfaction of their claims.

Myrtle's estate filed its estate tax return on June 25, 1971, and paid a reported tax liability of $401.59. The $99,362.19 settlement was claimed as a deduction from the gross estate under the provisions of 26 U.S.C. § 2053(a)(3) (1970). This deduction was disallowed by the IRS after an audit of the estate.[2] The Bank, as executor, paid the additional assessment and its claim for a refund was denied by the IRS. The instant action was commenced on June 27, 1975.

## IV. THE MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Based on these undisputed facts, the Government has filed a motion for partial summary judgment. As noted in footnote 2, *supra*, the only issue before the Court is the deductibility of the settlement payment by the estate. Plaintiff contends that any claim which is valid under the law of the state where the estate is being administered is a deductible claim against the estate. However, 26 U.S.C. § 2053(c)(1)(A) (1970), specifically provides that claims based on promises or agreements are deductible only to the extent that they were contracted bona fide for consideration in money or money's worth. Therefore, Missouri law on the consideration necessary to enforce a promise to make a will is irrelevant for estate tax purposes. The deductibility question is one of federal law. See, *Bank of New York v. United States*, 526 F.2d 1012, 1016 (3d Cir. 1975) (and cases cited in note 4 of that court's opinion).

■ Plaintiff also contends that because the settlement agreement was approved by a court order, payment by the executor was pursuant to a "liability imposed by law," within the meaning of Treas.Reg. § 20.-2053–4. If this view was accepted, the amount paid in settlement of the state court suit would be deductible without regard to consideration. However, a private settlement agreement cannot be considered as being founded on a court decree unless the court had the power to alter or modify the terms of the agreement. In this case, because of the Bank's fiduciary status as trustee, the settlement agreement had to be presented to the circuit court for approval. This procedure is for the protection of the trust beneficiaries. The circuit court could

2. The IRS also increased the valuation of certain mutual fund shares and denied a deduction for attorney's fees paid by the estate in connection with the state court settlement. The Government concedes error on these two is-

sues in its brief in support of its motion for partial summary judgment and, therefore, the only issue before the Court is whether the $99,-362.19 was properly deducted under the provisions of 26 U.S.C. § 2053 (1970).

have refused to approve the settlement if it found the agreement unreasonable from the point of view of the trustee Bank, in view of its fiduciary status. It did not have the power to change the terms of the agreement. Therefore, the claim sought to be deducted is based on the underlying promise and must be supported by consideration in money or money's worth. *Gray v. United States,* 541 F.2d 228, 232–233 (9th Cir. 1976). See also, *Bank of New York v. United States, supra* at 1018 (and legislative history cited in note 15 of the court's opinion).

In the Court's view, deductibility of the payment to Oliver's heirs turns on whether they received the payment as creditors of Myrtle's estate and whether the promise on which their "claims" were based was supported by consideration in money or money's worth. The Court holds that Dorell Luce, Helen Jenkins and Vera Roach did not receive payment as creditors of Myrtle's estate because they gave no consideration in money or money's worth for Myrtle's promise to provide for them in her will.[3]

Plaintiff continually emphasizes the contention that Oliver's heirs necessarily took as creditors under the settlement agreement and that the state court found them to be creditors. The state court made no such finding, either explicitly or by implication. Its order approving the settlement simply found that the heirs could make a submissible case on the existence of the contract to make a will and that the trustee Bank would be acting reasonably in settling the lawsuit. It is also noteworthy, although by no means crucial to the Court's holding, that there is nothing in the record to indicate that the claims of Oliver's heirs were presented to the probate court as creditor's claims.

The cases primarily relied on by plaintiff are distinguishable and do not control the issues presented in this case. The question in *Beecher v. United States,* 280 F.2d 202 (3d Cir. 1960), was whether payments made by decedent's estate to his two sons constituted the payment of claims or legacies. Decedent and his wife were separated. Decedent obtained a divorce in Japan. His wife obtained a separation and custody order from a New York state court and had a receiver appointed to control decedent's personal property in New York. She sued her husband in the state courts of New Jersey to enjoin his wholly-owned corporation from disposing of allegedly fraudulently obtained assets. A settlement agreement was reached on all disputes. It provided that decedent was to execute an agreement to devise his property in a certain manner and to execute a will consistent with the agreement. Decedent did so and his estate duly paid his two sons in accordance with the will. It was stipulated by the parties to the tax refund suit that consideration in money or money's worth had been given for decedent's promise. The probate court had specifically found that the sons were creditors of the estate. Accordingly, the only issue before the court was the effect to be given for tax purposes to the finding of the probate court. The court held that the probate court's finding was binding and allowed the estate to deduct the amounts paid to the two sons. However, the settlement agreement in question in *Beecher* was not based on the alleged breach of a contract to make a will. The agreement was not breached and the question of consideration had been stipulated out by the parties. In dicta, the court stated "[I]f the decedent had made this agreement to leave money to his sons by

---

**3.** There appears to be a factual dispute as to whether the alleged agreement between Oliver and Myrtle was supported by consideration over and above the mutual promises to execute substantially identical wills. Plaintiff contends that each party to the agreement transferred individual property to Oliver and Myrtle as joint tenants or tenants by the entirety. The Government admits the transfer of certain stock by Oliver to Oliver and Myrtle but denies

the other alleged transfers because of insufficient documentation. In view of the Court's resolution of the controversy, these disputed facts are not material in terms of Rule 56, Fed.R.Civ.P. Even if these property transfers did, in fact, occur, plaintiff would not prevail in this action. See, *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 209 (8th Cir. 1976).

will and then never had performed his agreement, surely the sons could have recovered as creditors of the estate." *Id.* at 204. With the consideration issue stipulated, the court's statement may have been accurate. However, this Court views the issue of consideration as crucial and, therefore, *Beecher* is not controlling.

The Third Circuit reaffirmed its holding in *Beecher* in *Darlington's Estate v. C.I.R.,* 302 F.2d 693 (3d Cir. 1962), cited by plaintiff. Thus, a state court's adjudication was held binding on the federal court for tax purposes. The issue in that case, though, involved construction of 26 U.S.C. § 2053(d)(1) and (2), which are not involved in this case. The court stated:

> We have three times held that, if federal law makes federal tax treatment depend, *without further qualification,* upon who has what rights in an estate under state law, a state court's adjudication which is final in its effect upon those rights must also be taken as final as to the tax matters which depend on those rights. [Citations omitted.] (Emphasis added.)

The statute involved in the instant case is 26 U.S.C. § 2053(c)(1)(A). This provides a "further qualification" to the deduction provisions of 26 U.S.C. § 2053(a)(3) in that it requires claims based on promises or agreements to be supported by consideration in money or money's worth. Since that is the issue in this case, *Darlington* is not controlling. The same distinction applies to *Goodwin's Estate v. C.I.R.,* 201 F.2d 576 (6th Cir. 1953). In that case, the probate court had allowed as claims payments to decedent's daughters in satisfaction of earlier loans made by them to decedent. The federal court held that the probate court's finding as to the legitimacy of the loans was conclusive for tax purposes. Thus, there was no question of consideration for decedent's promise. In the instant case, the issue of consideration in money or money's worth was not before the state court be-cause Missouri law does not require consideration in excess of the mutual promises to make an agreement to execute mutual wills enforceable.[4] Plaintiff's reliance on *Russell v. United States,* 260 F.Supp. 493 (N.D.Ill. 1966), is misplaced because the issue in that case was whether the claims sought to be deducted were "allowable by the laws of the jurisdiction . . . under which the estate is being administered," within the meaning of 26 U.S.C. § 2053(a). The claims in that case were not based on a promise or agreement and, therefore, consideration in money or money's worth was not an issue.

It is important to place the state court proceedings in context. As noted previously, Oliver's heirs brought a declaratory judgment action requesting the court to declare the amendments to Myrtle's trust agreement and subsequent will void as being in violation of the agreement to make a will similar to Oliver's. If that case had been tried and Oliver's heirs prevailed, they would have taken as legatees under Myrtle's will of January 21, 1950. The fact that they relied on the agreement does not change the character of their claim. This rationale distinguishes plaintiff's strongest authority, *First Bank of Amarillo v. United States,* 422 F.2d 1385 (10th Cir. 1970). There, the estate deducted a payment made to a state court plaintiff to settle her lawsuit alleging breach of an agreement to provide for her by will. The state court plaintiff was the other party to the alleged agreement and has provided services to decedent in exchange for his promise. If her state court suit had gone to trial and she prevailed, she would have been awarded damages for breach of the agreement. Moreover, being the other contracting party, the consideration given for decedent's promise came from her. In the instant case, Oliver's heirs would have taken as legatees if the state court suit had been decided in their favor after a trial. Moreover, the consideration for Myrtle's promise,

4. See, *e. g., Owens v. Savage,* 518 S.W.2d 192 (Mo.App.1974); *Wimp v. Collett,* 414 S.W.2d 65 (Mo.1967).

whatever it was,[5] came from Oliver, not his heirs.[6]

As the Government points out, Oliver's heirs were third party *donee* beneficiaries of the agreement between Oliver and Myrtle. While the distinction between creditor and donee third party beneficiaries has been discarded for contract law purposes, *Restatement of Contracts 2d,* § 133, the Court views the distinction as helpful in the instant case. The fact that Oliver's heirs were donee beneficiaries shows that they gave no consideration in money or money's worth for Myrtle's agreement to execute a will in their favor. Accordingly, their claim against Myrtle's estate was based on a donative transaction and the distribution to them in settlement of their lawsuit was actually a gift.

*Elrick v. C.I.R.,* 158 U.S.App.D.C. 270, 485 F.2d 1049 (1973) arose under 26 U.S.C. § 273 (an income tax provision) although the rationale of the case is directly applicable to the instant case. The taxpayer had received a life estate in the income from a trust in settlement of claims against her father's estate. She sought to deduct depreciation of the life estate for the amortization of legal fees over the life of the income producing trust assets. The deduction was denied under the provisions of 26 U.S.C. § 273 because the court held that she acquired the life estate by gift rather than by purchase and, accordingly, the depreciation provisions, 26 U.S.C. § 167, were not applicable. The court stated, in part:

> However, we emphasize this caveat: that this court will not be bound by the parties' self-serving characterization of the settled claim.
>
> That is, we are concerned that the Tax Court seemed to feel that merely by labelling her cause of action one for "quasi-specific performance of a contract to make a will," taxpayer managed to fore-

close all inquiry into the true nature of her claim. This would be the ultimate perversion of the *Lyeth* [*v. Hoey,* 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938)] rationale. *Lyeth* holds that it is the *realities* of the claim that control the characterization of the subsequent compromise or settlement, not the labels of the parties. [Footnote omitted.] In this regard, some preliminary judicial approval of the formulation of the issues would constitute an important factor in determining the nature of plaintiff's claims—and the further along the trial has progressed, the greater the ease with which this determination can be made with assurance. [Footnote omitted.] Otherwise the courts would be at the mercy of collusive settlement agreements wherein the parties, in the accommodating spirit of compromise (and with the foresight derived from the services of knowledgeable tax attorneys) have agreed to choose which of the pending causes of action is most advantageous for tax purposes and proceed to characterize the agreement a settlement of that claim alone.

\* \* \* \* \* \*

Contracts to make a will have repeatedly been held to constitute gifts or inheritances under the Code. The test is whether the recipient of the funds furnished adequate and full consideration for the payments received from the decedent. E.g., *Taft v. Commissioner,* 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393 . . . (1938); *In re Estate of Hartshorne,* 402 F.2d 592 (2d Cir. 1968); *Markwell's Estate v. Commissioner,* 112 F.2d 253 (7th Cir. 1940).[11] In this case taxpayer-appel-

---

[11] This question generally arises under § 102 . . . or § 2053 (where the decedent's estate argues that the gross estate should be reduced by a deduction for "claims against the estate—the tension arising over whether the amounts received were in settlement of a claim against the estate or simply an inheritance). Under both sections the test is the

---

**5.** See note 3, *supra.*

**6.** In *Bank of New York v. United States, supra,* the facts were almost identical to the instant case. However, there was no allegation that the contracting parties made property transfers at the time of their agreement. Accordingly,

the court disallowed the deduction of the settlement payment because no consideration in money or money's worth supported the promise to make a will. In view of the disputed facts noted in footnote 3, *supra,* Bank of New York is not on point.

same and it must be the same for purposes of § 273 as well.

In the cases which do find a bona fide purchase, invariably the taxpayer in question is a party to the contract, furnishing full and fair consideration. . . .

lee urges that "the 1955 transaction was bona fide and at arm's length" . . . We feel that the record does not begin to support this facile contention since there was a total absence of consideration moving from taxpayer to her father in return for his promise to make a will.

The reasoning of the court in *Elrick* is persuasive in the instant case. Plaintiff has not contended that Oliver's heirs provided consideration for Myrtle's promise. They were truly donee beneficiaries of Myrtle's promise. The intent of the contracting parties was to provide for them by will. When that intent was frustrated by Myrtle's subsequent conduct, the heirs brought suit to enforce their right to inherit under Myrtle's will. Their lawsuit was settled to their satisfaction. The true nature of the payment to them by the estate was testamentary. Characterizing their state court litigation as being on the contract does not change the true nature of the settlement and the substance of the transaction. Accordingly, it is

ORDERED that defendant's motion "to dismiss individual plaintiffs and to substitute proper party for executor-plaintiff," filed December 29, 1976, be, and the same hereby is, granted in part and denied in part as explained in the body of this order; and it is

ORDERED that defendant's motion for partial summary judgment, filed December 29, 1976, be, and the same hereby is, granted. Counsel for defendant is hereby directed to file a suggested form of final judgment in this cause within 15 days of the date of this order.